Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel XII

| HERIBERTO LARACUENTE ORTIZ, MACARIO TRANSPORT<br>Recurrente<br><br>v.<br><br>MUNICIPIO AUTÓNOMO DE JAYUYA CONSTRUCCIONES DEL VIVÍ & AGREGADOS CORPORACIÓN FERRETERIA EL GIGANTE #2, EMPRESAS ORTIZ BRUNET, INC., JS HEAVY EQUIPMENT AND CONSTRUCTION LLC., NORBERT CONTRACTORS SERVICES LLC.<br>Recurridas | TA2026RA00230 | *Revisión Judicial* procedente de la Junta de Subastas del Municipio Autónomo de Jayuya<br><br>Subasta General Núm. 001, Renglón 30, Suministro de Arena, Piedra y Polvillo<br><br>Sobre: Adjudicación de Subasta |

Panel integrado por su presidente, el Juez Candelaria Rosa, el Juez Adames Soto, el Juez Campos Pérez

Adames Soto, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 23 de junio de 2026.

Comparece Heriberto Laracuente Ortiz / Macario Transport (recurrente), mediante recurso de *revisión judicial,* solicitando que revoquemos la Adjudicación de Subasta General Núm. 2026-2027-001, Renglón 30, sobre Suministro de Arena, Piedra y Polvillo, emitida por la Junta de Subastas del Municipio de Jayuya. Juzga esta parte que debemos revocar la adjudicación de la subasta en favor de Construcciones del Viví & Agregados Corporación, por cuanto este licitador agraciado no cuenta con las autorizaciones legales requeridas por el Negociado de Transporte del Gobierno de Puerto Rico para transportar los materiales objeto de la subasta, lo cual imposibilita que preste el servicio ofrecido.

No nos persuade. Confirmamos.

## I. Resumen del tracto procesal

El 7 de abril de 2026, la Junta de Subastas del Municipio de Jayuya (el Municipio) celebró la Subasta General Núm. 2026-2027-001, Renglón 30, sobre Suministro de Arena, Piedra y Polvillo. El propósito específico de los servicios a ser licitados, en lo que nos concierne, refería al recogido en las facilidades del suplidor y de entregado al Municipio, para ser utilizados en la construcción de muros de gaviones en proyectos de FEMA. Las compañías licitadoras que comparecieron a la subasta fueron las siguientes: Norbert Contractors Services LLC.; Ferretería El Gigante #2, Inc.; Heriberto Laracuente Ortiz / Macario Transport; Construcciones Del Viví & Agregados Corporación; Empresas Ortiz Brunet, Inc. y JS Heavy Equipment and Construction LLC.

Aunque la parte recurrente **no** nos proveyó copia de las especificaciones de la subasta en el apéndice de su recurso de revisión judicial (lo que estaba llamado a hacer, según lo exige nuestro Reglamento[1]), los licitadores sí tuvieron el beneficio de contar con ellas para comparecer a licitar.

En cualquier caso, lo cierto es que, el 23 de abril de 2026, la Junta de Subastas del Municipio emitió *Notificación de Adjudicación*, adjudicando varios ítems del Renglón 30 de la subasta a distintos licitadores. Entre los licitadores agraciados con la buena pro estuvo la recurrida, Construcciones del Viví & Agregados Corporación. Es un hecho que Construcciones del Viví & Agregados Corporación obtuvo el mayor número de artículos adjudicados, mientras que el recurrente, Heriberto Laracuente Ortiz / Macario Transport, obtuvo un número menor de artículos adjudicados.

---

[1] La Regla 59(E)(1)(f) del Reglamento del Tribunal de Apelaciones exige que la parte recurrente incluya en el apéndice del recurso de revisión judicial cualquier documento que forme parte del expediente original de la agencia y que pueda ser útil en la resolución de la controversia. *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, 215 DPR __ (2025). Junto a la notificación de la adjudicación, que sí fue incluida, no podemos pensar en otro documento más central a una subasta que aquel que contiene las especificaciones de lo subastado.

Inconforme con dicho resultado, Heriberto Laracuente Ortiz / Macario Transport acudió ante nosotros, mediante recurso de *revisión judicial*, señalando la comisión de los siguientes errores por la Junta de Subasta:

> **PRIMER ERROR:** Erró la Junta de Subastas del Municipio Autónomo de Jayuya, al adjudicar la Subasta General Núm. 2026-2027-001, Renglón 30, Sobre: Suministro de Arena, Piedra y Polvillo a CONSTRUCCIONES DEL VIVÍ & AGREGADOS CORPORACION [*sic*] **sin estar la compañía** o la persona natural o jurídica autorizada por Negociado de Transporte y otros Servicios Públicos.
>
> **SEGUNDO ERROR:** Erró la Junta de Subastas del Municipio Autónomo de Jayuya, al adjudicar la Subasta General Núm. 2026-2027-001, Renglón 30, Sobre: Suministro de Arena, Piedra y Polvillo SOBRE EL RENGLON a CONSTRUCCIONES DEL VIVÍ & AGREGADOS CORPORACION [*sic*] sin estar el(los) **vehículo(s) de motor** autorizado por Negociado de Transporte y otros Servicios Públicos.
>
> **TERCER ERROR:** Erró la Junta de Subastas del Municipio Autónomo de Jayuya, al adjudicar la Subasta General Núm. 2026-2027-001, Renglón 30, Sobre: Suministro de Arena, Piedra y Polvillo SOBRE EL RENGLON a CONSTRUCCIONES DEL VIVÍ & AGREGADOS CORPORACION [*sic*] sin estar **los conductores** autorizados por Negociado de Transporte y otros Servicios Públicos.

Sobre tales señalamientos, el recurrente aseveró en su recurso: contar con vehículos de motor y choferes que están en cumplimiento con las licencias para realizar los trabajos requeridos en la subasta, según lo exige la reglamentación vigente del Negociado de Transporte y otros Servicios Públicos.[2] Para tal fin, este licitador anejó copia de su *Certificado de Autorización*, emitido por el Negociado de Transporte y Otros Servicios Públicos, que contiene su número de franquicia, junto a la información de tres vehículos autorizados a operar bajo la compañía. Afirmó, además, que contrario a ello, los vehículos ni choferes de Construcciones del Viví & Agregados Corporación disponían de las licencias requeridas por el referido Negociado para llevar a cabo el servicio por el cual licitó.

En oposición, la Junta de Subastas del Municipio presentó *Alegato de la Parte Recurrida*. Trajo a nuestra atención que "[n]ada se dispone ni requiere **en el pliego de especificaciones** de esta subasta en relación al cumplimiento con los requisitos establecidos por el Negociado de Transporte

---

[2] *Revisión Judicial*, Entrada Núm. 1 de SUMAC (TA), pág. 9.

y otros Servicios Públicos en su reglamento 9358."[3] (Énfasis provisto). Añadió que no existía evidencia alguna para determinar un posible incumplimiento con las disposiciones del Negociado de Transporte por el licitador agraciado con la buena pro, y el resultado de la subasta impugnada está fundamentado "en la protección del interés público al adjudicarse al postor que presentó la mejor y más baja oferta entre los licitadores cualificados, en beneficio del pueblo de Jayuya".[4] Finalmente, esta parte subrayó que en el pliego de especificaciones no se había establecido algún requisito que impidiera al suplidor subcontratar los servicios licitados, lo que resulta la práctica común en estos casos, quienes vendrán llamados a cumplir con los requerimientos legales pertinentes.

De igual forma compareció ante nosotros Construcciones del Viví & Agregados Corporación. Arguyó que "[i]ntima Laracuente, sin decirlo expresamente, que la subasta prohíbe que los licitadores cumplan con el servicio a través del arrendamiento de camiones o de la subcontratación de éstos y de choferes. El pliego de subasta no contiene prohibición alguna a esos efectos".[5] Al respecto, indicó que:

> [e]l pliego de especificaciones no restringe en ninguna de sus cláusulas la manera en que el licitador llevará a cabo el servicio objeto de la subasta. En otras palabras, al licitador no se le prohíbe que lleve a cabo el servicio a través de empleados o contratistas, y tampoco se le prohíbe que lleve a cabo el servicio mediante vehículos propios o subcontratados. Repetimos, de una revisión minuciosa del pliego de especificaciones no existen las prohibiciones antes mencionadas.[6]

Continuó exponiendo que "Laracuente alega que Construcciones del Viví & Agregados Corporación [...] no cuenta con las licencias necesarias, sin aportar evidencia alguna sobre esa aseveración"[7], y; "[e]l pliego de especificaciones contenía los requisitos que los licitadores debían cumplir para presentar propuestas. Laracuente no incluyó en su solicitud de revisión judicial el pliego de especificaciones. Al revisar la enumeración que contienen

---

[3] *Alegato de la Parte Recurrida*, Entrada Núm. 3 de SUMAC (TA), pág. 10.
[4] *Alegato de la Parte Recurrida*, Entrada Núm. 3 de SUMAC (TA), pág. 11.
[5] *Alegato en Oposición de la Parte Recurrida Construcciones del Viví & Ágregados Corporación*, Entrada Núm. 5 de SUMAC (TPI), pág. 4.
[6] *Alegato en Oposición de la Parte Recurrida Construcciones del Viví & Agregados Corporación*, Entrada Núm. 5 de SUMAC (TPI), pág. 6.
[7] *Alegato en Oposición de la Parte Recurrida Construcciones del Viví & Agregados Corporación*, Entrada Núm. 5 de SUMAC (TPI), pág. 4.

esas especificaciones, vemos que Laracuente no está cuestionando el incumplimiento de ninguna de esas especificaciones".[8] Ante lo cual afirmó que "[e]ste Tribunal de Apelaciones no puede tomar determinaciones para dejar sin efecto la adjudicación de una subasta a base de meras alegaciones contenidas en un alegato sin que esas alegaciones contengan las descripciones precisas y las evidencias que sustentan la alegación".[9]

Con el beneficio de la comparecencia de las partes, disponemos del recurso ante nuestra consideración.

## II. Exposición de Derecho

### A. Las Subastas Municipales

El objetivo de exigir que la contratación y las obras que realiza el Gobierno se efectúe mediante el proceso de subasta, es *proteger los intereses y el dinero público*. A través de las subastas se protegen los intereses del Soberano, ya que procuran conseguir *los precios más económicos; evitar el favoritismo, la corrupción, el dispendio, la prevaricación, la extravagancia y el descuido al otorgarse los contratos, y minimizar los riesgos de incumplimiento. Puerto Rico Eco Park, Inc. v. Municipio de Yauco*, 202 DPR 525, 531 (2019). Es decir, que la consideración primordial al momento de determinar quién debe resultar favorecido en el proceso de adjudicación de subastas debe ser el interés público en proteger los fondos del Pueblo de Puerto Rico. *Cordero Vélez v. Municipio de Guánica*, 170 DPR 237, 245 (2007).

Cónsono con lo anterior, el *Código Municipal de Puerto Rico* dispone en su Artículo 2.040 que *"[l]a Junta entenderá y adjudicará todas las subastas que se requieran por ley, ordenanza o reglamento y en los contratos de arrendamiento de cualquier propiedad mueble o inmueble y de*

---

[8] *Alegato en Oposición de la Parte Recurrida Construcciones del Viví & Agregados Corporación*, Entrada Núm. 5 de SUMAC (TPI), pág. 6.
[9] *Alegato en Oposición de la Parte Recurrida Construcciones del Viví & Agregados Corporación*, Entrada Núm. 5 de SUMAC (TPI), pág. 7.

*servicios, tales como servicios de vigilancia, mantenimiento de equipo de refrigeración entre otros".* 21 LPRA sec. 7216. Establece, además, el precitado Artículo 2.040, pero en su inciso (a), los criterios de adjudicación:

> a. Criterios de adjudicación — Cuando se trate de compras, construcción o suministros de servicios, la Junta adjudicará a favor del postor razonable más bajo. [...] ***La Junta hará las adjudicaciones tomando en consideración que las propuestas sean conforme a las especificaciones, los términos de entrega, la habilidad del postor para realizar y cumplir con el contrato,*** la responsabilidad económica del licitador, su reputación e integridad comercial, ***la calidad del equipo, producto o servicio*** y cualesquiera otras condiciones que se hayan incluido en el pliego de subasta.
>
> *La Junta podrá adjudicar a un postor que no sea necesariamente el más bajo … si con ello se beneficia el interés público.* En este caso, la Junta deberá hacer constar por escrito las razones aludidas como beneficiosas al interés público que justifican tal adjudicación. [...]. *Íd.* (Énfasis suplido).

Por otro lado, la Parte II del Reglamento Núm. 8873, *Reglamento para la administración municipal de 2016*, regula las subastas públicas municipales. Con tal propósito, la referida Parte II establece cómo se efectuará la Publicación de Aviso de Subasta Pública y cuál será el contenido del Aviso de Subasta Pública, **así como el contenido de los Pliegos de Especificaciones**, junto a los parámetros que se utilizarán en la adjudicación de la subasta. Por esa razón, en aquellas subastas de adjudicación, construcción y suministros de Servicios No Profesionales, la adjudicación de la subasta se hará en favor de aquel licitador **que cumpla con los requisitos y condiciones de los pliegos de especificaciones cuya propuesta sea la más baja en precio** o que, aunque no sea la más baja en precio, la calidad y/o garantías ofrecidas superan las demás ofertas o se justifique el beneficio de interés público de esa adjudicación. las subastas se adjudicarán a favor del licitador que esté respaldado por un buen historial de capacidad y cumplimiento. En adición a esto, el licitador tiene que cumplir con los siguientes requisitos:

> (a) Que cumpla con los requisitos y condiciones de los pliegos de especificaciones.

(b) Que sea la más baja en precio o que aunque no sea la más baja en precio, la calidad y/o garantías ofrecidas superan las demás ofertas o se justifique el beneficio de interés público de esa adjudicación. Secc. 11, Cap. VIII, Parte II.

En cuanto a la adjudicación de la buena pro, el Reglamento Núm. 8873 establece que la Junta tendrá que determinar las ofertas susceptibles de ser consideradas para la adjudicación, tomando como guía las normas establecidas en el Reglamento, así como en la información del Acta de Apertura y el Informe del Recaudador. Secc. 10, Cap. VIII, Parte II. Añade el Reglamento Núm. 8873 *"[l]uego de hacer esa determinación preliminar, la Junta procederá a verificar en las ofertas susceptibles de ser evaluadas, cuales han cumplido con las especificaciones y condiciones solicitadas en la subasta"*. *Íd.*

### B. Deferencia

Es norma de derecho reiterada que los foros revisores han de conceder gran deferencia y consideración a las decisiones de las agencias administrativas, dado a la vasta experiencia y conocimiento especializado sobre los asuntos que le fueron delegados. *Graciani Rodríguez v. Garage Isla Verde, LLC,* 202 DPR 117, 126 (2019). Por lo tanto, un recurso de revisión judicial ha de limitarse a determinar si la agencia actuó arbitrariamente, ilegalmente o de manera tan irrazonable que su actuación constituyó un abuso de discreción. *The Sembler Co. v. Mun. de Carolina*, 185 DPR 800, 821-823 (2012). La revisión judicial de las decisiones administrativas tiene como fin primordial asegurarse que las agencias desempeñen sus funciones conforme a la ley. *García Reyes v. Cruz Auto Corp.,* 173 DPR 870, 891-892 (2008).

La descrita normativa sobre deferencia tiene su génesis en el principio de que son los organismos administrativos los que cuentan con el conocimiento especializado sobre los asuntos que por ley se les han delegado. *Asoc. Fcias. v. Caribe Specialty et al. II,* 179 DPR 923, 940 (2010). En este ejercicio, el Tribunal Supremo ha sido enfático en que las

determinaciones de hechos de organismos y agencias públicas tienen a su favor una presunción de regularidad y corrección, que debe ser respetada mientras la parte que las impugne no produzca suficiente evidencia para derrotarla. *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712, 744 (2012); *Pereira Suárez v. Jta. Dir. Cond.*, 182 DPR 485, 511 (2011); *Camacho Torres v. AAFET,* 168 DPR 66, 91 (2006); *Otero v. Toyota*, 163 DPR 716, 729 (2005).

Es decir, quien las impugne tiene el deber insoslayable, para prevalecer, de presentar ante el foro judicial la evidencia necesaria que permita, como cuestión de derecho, descartar la presunción de corrección de la determinación administrativa. El peso de la prueba descansa entonces sobre la parte que impugna la determinación administrativa. *Camacho Torres v. AAFET,* supra, pág. 91. En resumen, "la revisión judicial de las determinaciones administrativas se limita a determinar si la actuación administrativa fue razonable y solo cede cuando está presente alguna de las siguientes situaciones: (1) cuando la decisión no está basada en evidencia sustancial; (2) cuando el organismo administrativo ha errado en la aplicación de la ley; y (3) cuando ha mediado una actuación irrazonable o ilegal". *Costa Azul v. Comisión*, 170 DPR 847, 852 (2007).

En el ámbito de las subastas gubernamentales, la deferencia a la determinación administrativa se mantiene bajo los parámetros ya señalados. De hecho, la junta de subastas de la agencia o municipio goza de amplia discreción en la evaluación de las propuestas sometidas ante su consideración. *Caribbean Communications v. Pol. de P.R.,* 176 DPR 978*,* 1006 (2009); *Accumail PR v. Junta Sub. AAA,* 170 DPR 821, 828-829 (2007). Además, "[l]a agencia, con su vasta experiencia y especialización, se encuentra, de ordinario, en mejor posición que [el tribunal] para determinar el mejor licitador tomando en consideración los factores esgrimidos tanto por

la ley como su Reglamento de Subastas". *AEE v. Maxon*, 163 DPR 434, 444 (2004). Al respecto, nuestro Tribunal Supremo ha resaltado:

> [E]n el ejercicio de sus facultades[,] se les reconoce discreción al momento de considerar las licitaciones, rechazar propuestas y adjudicar la subasta a favor de la licitación que estime se ajusta mejor a las necesidades particulares de la agencia y al interés público en general. Como consecuencia de ello, **los tribunales no debemos intervenir con el rechazo de una propuesta o la adjudicación de una subasta, salvo que la determinación administrativa adolezca de un abuso de discreción, arbitrariedad o irracionalidad**. (Énfasis suplido). *CD Builders v. Mun. Las Piedras*, 196 DPR 336, 348-349 (2016).

A tenor, una vez se adjudique la buena pro, los tribunales no deben sustituir el criterio de la agencia o junta concernida, a menos que se demuestre que la decisión se tomó de forma arbitraria o caprichosa, o que medió fraude o mala fe. *Torres Prods. v. Junta Mun. Aguadilla*, 169 DPR 886, 898 (2007); *Empresas Toledo v. Junta de Subastas*, 168 DPR 771, 783 (2006).

De no haber mediado las excepciones antes indicadas, ningún postor tiene derecho a quejarse cuando otra proposición es elegida como la más ventajosa. *Torres Prods. v. Junta Mun. Aguadilla*, supra. Es decir, ningún postor tiene un derecho adquirido en ninguna subasta. **La determinación de la agencia será sostenida si cumple con el estándar de razonabilidad.** (Énfasis suplido). *Accumail PR v. Junta Sub. AAA*, supra, pág. 829. A la luz de lo anterior, **quien pretenda impugnar una adjudicación realizada por una Junta tendrá que demostrar fehacientemente que el criterio de selección se desvió de tal manera del correcto proceder, que la decisión tomada es arbitraria**. (Énfasis suplido). En consonancia, **la parte promovente de la impugnación viene obligada a identificar en el expediente de la subasta aquella prueba que menoscabe la razonabilidad de la decisión tomada**. (Énfasis suplido). *Misión Ind. PR v. JP*, 146 DPR 64, 134-135 (1998).

## C. Ley de Servicio Público de Puerto Rico

Mediante la aprobación de la *Ley de Servicio Público de Puerto Rico*, Ley Núm. 109 de 28 de junio de 1962, según enmendada, 27 LPRA sec. 1001 *et seq.* (Ley Núm. 109-1962), se creó la Comisión de Servicio Público (Comisión) como una agencia administrativa investida de los poderes y prerrogativas necesarias para cumplir con el propósito legislativo de regular los servicios públicos en beneficio de los intereses de la comunidad en general. Cónsono con ello, la Asamblea Legislativa concedió a la Comisión poderes de reglamentación y fiscalización respecto a toda la transportación pública terrestre, marítima y por aire, entre otras. Posteriormente, mediante la *Ley de Ejecución del Plan de Reorganización de la Junta Reglamentadora de Servicio Público de Puerto Rico*, Ley Núm. 211-2018, según enmendada (Ley Núm. 211-2018), los poderes y facultades de que estaba revestida la Comisión fueron transferidos al Negociado de Transporte y Otros Servicios Públicos (Negociado). Cabe destacar que el referido ente se encuentra adscrito a la Junta Reglamentadora del Servicio Público (Junta), creada en virtud de la *Ley del Nuevo Gobierno de Puerto Rico*, Ley Núm. 122-2017, 3 LPRA sec. 8841 *et seq.* (Ley Núm. 122-2017). No obstante, en virtud de la Ley Núm. 109-1962, *supra*, el Negociado continúa como el ente que ostenta las facultades para reglamentar la industria del transporte en Puerto Rico.

Cónsono con lo anterior, el inciso (a) del Artículo 14 de la Ley Núm. 109-1962, 27 LPRA sec. 1101(a), dispone que el Negociado "tendrá facultad para otorgar toda autorización de carácter público para cuyo otorgamiento no se haya fijado otro procedimiento de ley, incluyendo el derecho de usar o cruzar a nivel, sobre nivel o bajo nivel las vías públicas o cauces de aguas públicas y para reglamentar las compañías de servicio público, porteadores públicos y porteadores por contrato [...]". Asimismo, el Negociado tiene la facultad, entre otras cosas, de imponer multas y otras

sanciones administrativas al amparo del mencionado estatuto. 27 LPRA sec. 1101(b). Dichos poderes y facultades son ejercitables no solamente en relación con las compañías de servicio público, porteadores por contrato, empresas de vehículos privados dedicados al comercio, personas que se dediquen al transporte turístico y entidades que actúen como compañías de servicio público o como porteadores por contrato, sino también con respecto a:

> (1)  Toda persona o entidad que infrinja a las disposiciones de esta parte.
>
> (2)  Toda persona o entidad cuyas actuaciones afecten o puedan afectar la prestación de algún servicio público.
>
> (3)  Toda persona o entidad que lleve a cabo cualquier actividad para la cual sea necesaria obtener una autorización o endoso del NTSP.
>
> (4)  Toda persona o entidad cuyas actuaciones u omisiones resulten en perjuicio de las actividades, recursos o intereses en relación con los cuales el NTSP tiene poderes de reglamentación, supervisión o vigilancia. 27 LPRA sec. 1101(c).

## III. Aplicación del Derecho a los hechos

Los señalamientos de error alzados por el recurrente giran en torno a un mismo tema, o promueven una única teoría legal; que el licitador agraciado con la buena pro, Construcciones del Viví & Agregados Corporación, no puede legalmente proveer lo servicios que licitó, en tanto sus vehículos de motor y conductores no cuentan con la debida autorización que exige el Negociado de Transporte y Otros Servicios Públicos para poder operar el transporte de la carga a la que se obligó.

Entonces, limitando nuestra mirada o examen a tal señalamiento, lo primero que salta a la vista es que, tal como los recurridos resaltaron, de los pliegos de condiciones y especificaciones de la subasta **no** surge requisito alguno que se ocupara del cumplimiento con las condiciones que impone el Negociado de Transporte y Otros Servicios Públicos a los acarreadores de los servicios a ser prestados. Es decir, atendiendo a los requerimientos de la

subasta que el Municipio impuso como condición para todo licitador participante, en ninguno de estos se encuentra el alzado ante nosotros por el recurrente como presunta causa de revocación de la adjudicación de la subasta.

Muy de la mano de lo antes afirmado se encuentra, además, la ausencia de alguna prohibición sobre subcontratación de los servicios subastados. Obsérvese que, en su comparecencia, el Municipio ni siquiera esgrimió que en las especificaciones de la subasta se hubiese consignado un máximo porcentual de subcontratación permitida, de lo que se sigue que no fueron puestas cortapisas a tal contratación, de elegirla los licitadores. De este modo, resulta razonable la argumentación dirigida a sostener que, para cumplir con los requerimientos de la Comisión, bastaría que la persona y el vehículo subcontratado se encuentren en cumplimiento con los requisitos legales que impone el Negociado de Transporte.

Nótese que, con lo hasta aquí afirmado, en modo alguno hemos interpretado o propuesto una relajación del cumplimiento con las facultades para reglamentar la industria del transporte en Puerto Rico que ostenta el Negociado de Transporte. Con más claridad, rechazamos sugerir con nuestro curso decisorio que el licitador que aquí obtuvo la buena pro pueda prescindir del cumplimiento con la ley especial que rige la transportación pública en Puerto Rico.

Lo que sí hemos decidido es que, examinada la adjudicación de la subasta, no surge que la parte recurrente demostrara fehacientemente que el criterio de selección se desviara de tal manera del correcto proceder que la decisión tomada fuera arbitraria, o violentara los términos en que aconteció. Es decir, la parte recurrente no logró identificar en el expediente de la subasta aquella prueba que menoscabara la razonabilidad de la decisión tomada, que es el criterio revisor que nos compete como foro intermedio. Al contrario, el expediente evidencia o sostiene que la subasta se ejecutó

conforme a su pliego de especificaciones y el licitador al que se le adjudicó la buena pro presentó la oferta más económica. Respecto al señalamiento sobre las licencias o derechos que dimanan de la reglamentación de la transportación pública en Puerto Rico, le competerá al Municipio velar que los licitadores agraciados cumplan cabalmente con las tales.

En definitiva, la adjudicación de la buena pro emitida por la Junta de Subastas no adolece de abuso de discreción, arbitrariedad ni irracionalidad que justifique nuestra intervención.

**IV. Parte dispositiva**

Por los fundamentos expuestos, *Confirmamos* el dictamen recurrido.

Lo acordó y manda el Tribunal y lo certifica su Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones